**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEONARD STRONG** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.  21-4652** |
| **CITY OF PHILADELPHIA, et al.** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Rufe, J.                                                                                          **March 28, 2023**

Plaintiff Leonard Strong initiated this suit for horrific injuries sustained from an attack by another inmate at the Philadelphia Department of Prisons ("PDP"). The City of Philadelphia, Warden Cathy Talmadge, multiple correctional officers,[1] and inmate Joshua White[2] are named as Defendants. After answering the Complaint, Defendants now move for summary judgment. Given the particular circumstances of this case, the Court will grant the Defendant's motion for summary judgment in part and dismiss it without prejudice in part. Additionally, the Court will give Plaintiff the opportunity to file a motion to the amend the Complaint.

I.        **BACKGROUND**

On May 29, 2018, at approximately 5:50 pm, Officer Ryan Wansley was conducting a routine tour of D-Dorm of the Detention Center when he noticed a crowd of inmates gathering in

---

[1] Specifically, the Complaint names Officers Ferguson, Ski, Scott, and Ringold. Plaintiff contends that "Officer Ringold" is Officer Ferguson. *See* Pl.'s Opp. Mot. Summ. J. [Doc. No. 17] at ECF pages 4-5. "Officer Ski" is Officer Wiercinski. *Id.* For the sake of clarity, the Court refers to them as Officers Ferguson and Wiercinski in this Memorandum.

[2] By Order dated December 7, 2021, the Court dismissed the claims against White without prejudice for lack of prosecution. *See* Order of Dec. 7, 2021 [Doc. No. 6].

section 308.[3] Officer Wansley informed his partner, Officer Lisa Golden, that Plaintiff and White were fighting.[4] Officer Golden requested by walkie-talkie that a supervisor come to D-Dorm.[5] Sergeant Mary Miles immediately responded, but the situation was "under control" by the time she arrived.[6] Sergeant Miles realized that Plaintiff's ear had been bitten off and ordered Officer Scott to escort Plaintiff to medical.[7] Sergeant Miles handcuffed White and removed him from the housing unit.[8]

The detached ear was immediately put into a basin full of ice and Plaintiff was assessed.[9] Staff members of Corizon Medical ordered that Plaintiff be transported to Temple University Hospital Emergency Department.[10] Upon Plaintiff's arrival to Temple, Plaintiff was treated by emergency room staff, who were unable to reattach the ear at that time; however, it was implanted beneath the skin to allow for cell regeneration to be reattached at a later date.[11] Lieutenant Spicer conducted the PDP investigation and issued a report on June 5, 2018 to

---

[3] Statement of Uncontested Material Facts [Doc. No. 14-1] ¶ 1. Defendants contend that they use the term "uncontested" because Plaintiff's counsel allegedly failed to engage in substantive conversations about the material facts of the case. *Id.* at n.1.

[4] SUMF [Doc. No. 14-1] ¶ 2.

[5] SUMF [Doc. No. 14-1] ¶ 3.

[6] SUMF [Doc. No. 14-1] ¶ 4.

[7] SUMF [Doc. No. 14-1] ¶¶ 5-6.

[8] SUMF [Doc. No. 14-1] ¶ 7.

[9] SUMF [Doc. No. 14-1] ¶ 8.

[10] SUMF [Doc. No. 14-1] ¶ 9.

[11] SUMF [Doc. No. 14-1] ¶ 11.

Defendant Talmadge.[12] Defendants Ferguson and Wiercinski were not on duty at the time of the incident.[13]

Plaintiff raises several additional allegations in his affidavit, submitted in opposition to the motion for summary judgment. Plaintiff contends that earlier in the day, in the morning of May 29, 2018, White told another inmate that he wanted to "F" Plaintiff "up."[14] Plaintiff states that this threat turned into a physical fight between himself and White, which was broken up by Defendants Ferguson and Wiercinski.[15] Plaintiff believes that both officers overheard White's threat and claims that he also informed them of the threat.[16] Plaintiff argues that after the incident, Defendants Ferguson and Wiercinski failed to tell housing about the fight and to separate their sleeping quarters, which is prison protocol.[17]

Plaintiff claims that White continued to make threats targeting him later in the day, and that Plaintiff reported the morning fight and threats to Defendant Ferguson at approximately 2:30 to 3:00 pm.[18] After a visit with his attorney, Plaintiff went to section 101 and asked Defendant Ferguson to "count [him] in" in this section because White "wanted to make a scene."[19] At 6:00

---

[12] SUMF [Doc. No. 14-1] ¶ 12.

[13] SUMF [Doc. No. 14-1] ¶¶ 13-14. However, in Plaintiff's affidavit, he claims that Officer Ferguson was on site at the time of the attack.  Pl.'s Opp. Mot. Summ J. Ex. A ("Pl.'s Aff.") [Doc. No. 17-2] ¶ 8.

[14] Pl.'s Aff. [Doc. No. 17-2] ¶ 4.

[15] Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

[16] Pl.'s Aff. [Doc. No. 17-2] ¶ 5.

[17] Pl.'s Aff. [Doc. No. 17-2] ¶ 5.

[18] Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

[19] Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

pm, Plaintiff states that he went to his section and contends that Defendant Scott gave him an ultimatum to either go into the sally port or go to his section, at which time Plaintiff told Scott that "if I did that, there was going to be a fight."[20] Plaintiff then entered his section, and White attacked Plaintiff and bit his ear.[21] Plaintiff asserts that the correctional officers did not attempt to stop the fight and they "waited until it was over."[22] After returning from the hospital, Plaintiff was placed in the hole.[23] Plaintiff contends that he learned after the attack that White was known to fight and bite people.[24]

A police report was filed with the Philadelphia Police Department.[25] On May 30, 2018, Plaintiff submitted a complaint to Lieutenant Spicer challenging his confinement in the hole.[26] This complaint states that White made a threat to Plaintiff before the attack, which Plaintiff reported to Defendants Ferguson and Scott. [27]

## II.    CASE HISTORY

As this case presents in an unusual posture, a brief overview of the procedural history and the parties' positions is necessary. Plaintiff, represented by counsel, initiated this suit by Writ of

---

[20] Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

[21] Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

[22] Specifically, Plaintiff contends that Defendants Ferguson and Scott, as well as Officers Golden and "Fifty," did not attempt to stop the fight. Pl.'s Aff. [Doc. No. 17-2] ¶ 7.

[23] Pl.'s Aff. [Doc. No. 17-2] ¶ 11.

[24] Pl.'s Aff. [Doc. No. 17-2] ¶ 9.

[25] Pl.'s Opp. Mot. Summ. J. Ex. D [Doc. No. 17-2].

[26] Pl.'s Opp. Mot. Summ. J. Ex. C [Doc. No. 17-2].

[27] Pl.'s Opp. Mot. Summ. J. Ex. C [Doc. No. 17-2].

Summons in the Philadelphia Court of Common Pleas on May 11, 2020. He then filed a formal Complaint on September 29, 2021.

Although the Complaint was counseled, it contains several internal inconsistencies. Put simply, some of the claims do not match the allegations set forth in the Complaint. Plaintiff describes the attack involving White, which led to White biting off his ear, and alleges that the correctional officers failed to prevent it. Plaintiff also claims that White was known to fight and bite other inmates. Plaintiff alleges that after the attack, Defendants falsely represented that he assaulted them and caused him to be arrested and prosecuted on these charges.[28] However, many of the counts themselves assert that Defendants used excessive force on Plaintiff's person (including to falsely arresting and maliciously prosecuting him).[29]

On October 22, 2021, Defendants removed the case to this Court, as several of Plaintiff's claims seek relief pursuant to 42 U.S.C. § 1983. Defendants did not move to dismiss the case, but instead answered the Complaint.[30] Following a Rule 16 conference, the parties engaged in fact discovery, which concluded on May 3, 2022.[31]

Defendants now move for summary judgment. Although the parties supposedly engaged in fact discovery, they have submitted very little in the way of evidence. In support of his

---

[28] Plaintiff notes that all the charges were nolle prossed. Not. Removal Ex. B ("Compl.") [Doc. No. 1] at ¶ 23.

[29] Specifically, in Count I, Plaintiff alleges that Defendants violated his rights to be safe from excessive use of force under the Fourth Amendment and to due process under the Fourteenth Amendment. In Count II, Plaintiff alleges that Defendants violated his rights to be free from cruel and unusual punishment and to be safe from excessive use of force under the Eighth Amendment. In Count III, Plaintiff brings a claim of assault and battery. In Count IV, Plaintiff brings a claim of malicious prosecution under state law. In Count V, Plaintiff asserts a claim of false arrest and malicious prosecution under the Fourth and Fourteenth Amendments. Finally, in Count VI, Plaintiff asserts a claim of municipal liability (*i.e.*, a *Monell* claim) against the City.

[30] *See* Def.'s Answer [Doc. No. 3].

[31] *See* Order of Jan. 6, 2022 [Doc. No. 12].

opposition, Plaintiff submits: (1) his affidavit dated August 15, 2022; (2) photos of his injuries; (3) a prison block log from May 29, 2018; (4) his complaint to Lieutenant Spicer dated May 30, 2018; and (5) a police report dated May 29, 2018. Defendants have not submitted any evidence in support of their motion, beyond a statement of facts that are merely "uncontested" by Plaintiff's counsel.[32] The Court cannot determine from the submitted record whether Defendants took the opportunity to depose Plaintiff, let alone whether *any* depositions were taken in this case.

In support of their motion for summary judgment, Defendants argue that Counts I through V do not fit the facts of this case. Defendants distill Plaintiff's six-count Complaint into three issues: (1) an Eighth Amendment failure to protect claim; (2) a failure to intervene claim; and (3) a constitutional violation under *Monell*. At the time the motion for summary judgment was filed, Defendants contend that Plaintiff had not yet specifically raised an Eighth Amendment failure to protect claim or a failure to intervene claim. Even if timely or correctly pled, Defendants argue they should be granted summary judgment on those claims. Defendants argue that Plaintiff's *Monell* claim (Count VI) is the only relatively applicable claim, but believe that they are nevertheless entitled to summary judgment on this claim as well.

In response, Plaintiff asserts that he properly raised an Eighth Amendment failure to protect claim and that his Complaint also states a factual basis for a failure to intervene claim under all counts. The opposition does not otherwise address the issue of timeliness. Plaintiff also submits his own affidavit containing additional allegations, which are described in greater detail above.

---

[32] SUMF [Doc. No. 14] at n.1.

Defendants argue that the failure to protect and failure to intervene claims fail because (1) they are unsupported outside of Plaintiff's own allegations, and (2) they are untimely. Defendants also contest Plaintiff's affidavit, arguing that it sets forth new theories and allegations well after the discovery deadline.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[34]

The court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[35] It is improper for a court to "weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[36] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[37] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[38] If, after making all reasonable

---

[33] Fed. R. Civ. P. 56(a).

[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[35] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[36] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citations omitted).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[38] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[39]

## IV.    DISCUSSION

As mentioned above, Defendants distill the Complaint into three issues: (1) an Eighth Amendment failure to protect claim; (2) a failure to intervene claim; and (3) a constitutional violation under *Monell*. Plaintiff's counsel apparently agrees, as the opposition brief is structured to address each of these issues. The Court will address each in turn.

### A.  Eighth Amendment Failure to Protect Claim & Failure to Intervene Claim

The Complaint contains many internal inconsistencies, even though it was verified by counsel. The actual *counts* raised in the Complaint do not set forth an Eighth Amendment failure to protect or failure to intervene claim. Plaintiff's counsel effectively attempts to amend the Complaint by raising these claims in the opposition brief. However, "[a] plaintiff 'may not amend his complaints through arguments in his brief in opposition to a motion for summary judgment.'"[40]

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with" Federal Rule of Civil Procedure 15(a).[41] Federal Rule 15(a) governs amendments before trial and provides, in relevant part:

> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or

---

[39] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[40] *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)).

[41] *Id.* (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1313, 1315 (11th Cir. 2004)).

> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments.* **In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.**[42]

Plaintiff's counsel has not formally moved to amend the Complaint. However, plaintiffs may utilize Rule 15 to amend pleadings under certain circumstances, even during and after trial.[43] The Court is sympathetic to Plaintiff's severe injuries and recognizes that Plaintiff's *counsel* submitted the Complaint and all the briefing in this case. A party relies on its counsel to set forth the proper claims in the complaint, *i.e.*, claims that fit the allegations of this case, and allegations that support those claims.

Given the circumstances of this case, the Court will dismiss Defendants' motion for summary judgment without prejudice as to Counts I through V, and allow Plaintiff to file a motion for leave to amend the pleadings. The Court does not determine at this time whether Plaintiff has a valid failure to protect or failure to intervene claim, only that he should have the opportunity to seek leave to plead those claims.

### B. Personal Involvement of Defendants

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[44] In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983

---

[42] Fed. R. Civ. P. 15(a) (emphasis added).

[43] *See* Fed. R. Civ. P. 15(b).

[44] *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[45]

There are two theories of supervisory liability: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."[46] With respect to the first theory, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."[47] With respect to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.[48]

Defendants argue that Plaintiff has not alleged any personal involvement by Defendants Talmadge, Ferguson, or Wiercinski. In response, Plaintiff sets forth multiple allegations that Defendants Ferguson and Wiercinski knew White was a threat, but failed to stop White from harming him. With respect to Defendant Talmadge, Plaintiff contends that she was indifferent to the prison rules and regulations that she failed to enforce as Warden.

---

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[46] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

[47] *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

[48] *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Iqbal*, 556 U.S. at 677.

While Plaintiff does allege the personal involvement of Defendants Ferguson and Wiercinski, his arguments regarding Defendant Talmadge are more attenuated. Plaintiff points to the prison log for his block on the day of the attack, claiming that this document "evidences the indifference to prison regulations that the Warden, Defendant, Talmadge, is, and/or should be, aware of, yet failed to enforce."[49] Plaintiff argues that correctional officers did not report on the conditions of the block between 3:21 pm and 6:52 pm, even though they claimed that tours were made every half hour during that time.[50] However, this document does not establish Defendant Talmadge's liability, as it does not illustrate that she maintained a policy, practice, or custom that caused the alleged constitution harm, or that she was involved in the events at issue, directed others to violate Plaintiff's constitutional rights, or had knowledge of and acquiesced in the alleged violations.

Accordingly, the Court will grant Defendants' motion for summary judgment as to the claims against Defendant Talmadge.

### C.  *Monell* Claim

Municipalities may be sued under § 1983 for violations of constitutional rights.[51] Claims of municipal liability may proceed in two ways. First, a plaintiff may allege that "an unconstitutional policy or custom of the municipality led to his or her injuries."[52] Second, a

---

[49] Pl.'s Opp. Mot. Summ. J. [Doc. No. 17] at ECF page 4.

[50] Pl.'s Aff. [Doc. No. 17-2] ¶ 14. The Court notes that although there are no reports on the conditions of the block between 3:21 pm and 6:52 pm, the log does state that tours were made during that time at 4:00 pm, 4:30 pm, 5:00 pm, and 5:30 pm.

[51] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978).

[52] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations omitted).

plaintiff may allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'"[53]

Defendants contend there is no evidence that the City was deliberately indifferent to a pattern of constitutional violations by PDP officers, nor does the record provide a basis on which to conclude that any policy, practice, or custom of the City caused the attack. In response, Plaintiff argues that the Complaint "specifies a variety of particular policies, customs, and practices" that resulted in Plaintiff's alleged injuries.[54] Further, Plaintiff asserts that the City failed to "investigate, discipline, supervise, monitor, and control officers' understanding of prison procedures and policies regarding prisoner safety and housing."[55]

It appears that Plaintiff does not take issue with any of the City's policies, but instead argues that certain policies were not followed. For example, Plaintiff contends that correctional officers are supposed to report all fights, issues, and incidents between inmates and to separate them from one another. However, he claims that Defendants Ferguson and Wiercinski failed to do so. Next, Plaintiff points to the prison log for his block on the day of the attack, asserting that this document "proves that prison policies and procedures were not followed."[56] As described above, the prison log does not support his claim. Critically, Plaintiff fails to identify any policies, practices, or customs of the City that resulted in his alleged deprivations, nor has he shown that the City was deliberately indifferent to a pattern of constitutional violations.

---

[53] *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)) (citations omitted).

[54] Pl.'s Opp. Mot. Summ. J. [Doc. No. 17] at ECF page 5.

[55] Pl.'s Opp. Mot. Summ. J. [Doc. No. 17] at ECF page 19.

[56] Pl.'s Opp. Mot. Summ. J. [Doc. No. 17] at ECF page 4.

Accordingly, the Court grants Defendants' motion for summary judgment as to Count VI (the *Monell* claim).

## V.    CONCLUSION

Given the particular circumstances of this case, Defendants' motion for summary judgment is granted as to Count VI (the *Monell* claim) and as to all claims against Defendant Talmadge. The motion is dismissed without prejudice as to Counts I through V. The Court will give Plaintiff the opportunity to file a motion for leave to amend the Complaint within 60 days, consistent with the reasoning set forth in this Memorandum Opinion. If Plaintiff does not file a motion, or the motion to amend is denied, Defendants may file a renewed motion for summary judgment. The Court reminds counsel that they are expected to competently represent their clients' best interests, consistent with the highest standards of the profession. An order will be entered.